IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NATIONWIDE GENERAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) HECTOR MONTALVO MARTINEZ, ) ) Defendant. ) ) | Civil Action No. 1:22cv1428 (AJT/JFA) |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on a motion for default judgment filed by plaintiff Nationwide General Insurance Company ("plaintiff" or "Nationwide") against defendant Hector Montalvo Martinez ("defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2).[1] (Docket no. 15). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

**Procedural Background**

On December 15, 2022, plaintiff filed a complaint against defendant and Paniagua seeking declaratory judgment. (Docket no. 1) ("Compl."). On January 12, 2023, plaintiff filed a proof of service that stated defendant was served with a summons and complaint on January 6, 2023. (Docket no. 7). In accordance with Federal Rule of Civil Procedure 12(a), defendant's responsive pleading was due on January 27, 2023. Defendant failed to file a responsive pleading, and the time for doing so has expired.

---

[1] Pursuant to District Judge Trenga's order dated March 16, 2023, defendant Ruddy Almicar Paniagua was dismissed without prejudice. (Docket no. 20).

Plaintiff requested an entry of default against defendant on January 30, 2023. (Docket no. 11). The Clerk of Court entered default against defendant on February 3, 2023. (Docket no. 14). On February 15, 2023, plaintiff filed a motion for default judgment (Docket no. 15) along with a memorandum in support (Docket no. 16), a notice of hearing for Friday, March 24, 2023 (Docket no. 17), and a certificate of mailing with *Roseboro* notice (Docket no. 18). On March 16, 2023, District Judge Trenga dismissed Paniagua without prejudice. (Docket no. 20). On March 24, 2023, this motion was called in open court, and plaintiff's counsel appeared, but no one appeared on behalf of defendant.

## Factual Background

**Nationwide Policy**

The following facts are established by the complaint and attached exhibits. (Compl.; Docket nos. 1-1, 1-2). On January 22, 2016, plaintiff issued Nationwide Homeowner Policy 53 45 HO 923415 ("policy"). (Compl. ¶¶ 1–2; Docket no. 1-1 at 2). The policyholder, also known as the named insured, listed on the policy is Paniagua. (Compl. ¶ 25; Docket no. 1-1 at 4). The policy was formed, made, and entered into in Fauquier County, Virginia, and it afforded a $300,000 limit for personal liability coverage for bodily injury. (Compl. ¶ 1; Docket no. 1-1 at 4). The policy was in effect from January 20, 2016 to January 20, 2017. (Compl. ¶ 2; Docket no. 1-1 at 4).

Under the policy's personal liability coverage provisions, plaintiff agreed to provide liability coverage for damages an insured is legally obligated to pay due to an occurrence of bodily injury. (Compl. ¶ 24; Docket no. 1-1 at 24). "Insured" is defined as, *inter alia*, "you," "your relatives," or "any other person under age 21 and in the care of you or your relatives," as long as the relative or minor is a resident of "your household at the residence premises."

2

(Compl. ¶ 25; Docket no. 1-1 at 24). "You" refers to the named insured who resides at the residence premises. (Compl. ¶ 25; Docket no. 1-1 at 9). If an individual is not an insured, plaintiff is under no obligation to pay damages that individual is legally obligated to pay.

The personal liability coverage does not apply to bodily injuries that arise out of business pursuits of an insured. (Compl. ¶ 28; Docket no. 1-1 at 27, 32). An exception to the business pursuit exclusion applies for activities normally considered non-business, such as incidental business activities by an insured. (Docket no. 1-1 at 27). In the case of an occurrence, the policyholder must (1) provide plaintiff notice as soon as practicable and (2) identify the policy and insured; time, place, and facts of the accident or occurrence; and names and addresses of the claimants and witnesses. (Compl. ¶ 26; Docket no. 1-1 at 29). The policy is void if the policyholder or an insured intentionally misrepresented any material fact or circumstance to plaintiff that would have caused plaintiff not to issue the policy. (Compl. ¶ 27; Docket no. 1-1 at 36).

**Acquisition of Property and Policy**

On or about January 20, 2016, Paniagua, as a grantee, acquired the real property and improvements thereon located at 10026 Quiet Meadow Lane, Catlett, Fauquier County, Virginia ("property") by deed from the grantor, The Gregory And Kathy Florence Living Trust. (Compl. ¶ 10). Paniagua acquired the property with the intent that defendant would be the true owner and occupier of the property, and defendant had the same intentions. (Compl. ¶¶ 11–12). Paniagua did not pay any part of the consideration for the purchase, nor did he at any time pay any mortgage payments, real estate taxes, insurance, or other costs and expenses for the acquisition or maintenance of the property. (Compl. ¶ 11). Paniagua has never resided or intended to reside

3

at the property. (Compl. ¶ 12). Paniagua conveyed the property to defendant by deed of gift recorded on or about January 9, 2020. (Compl. ¶ 13).

The policy was written and issued by an agent for plaintiff soon after Paniagua's acquisition based exclusively upon the agent's communications with the person and entity conducting the transaction for the sale and transfer of the property from The Gregory And Kathy Florence Living Trust to Paniagua. (Compl. ¶¶ 10, 14). No agent, representative, or employee of plaintiff had any communications with defendant or Paniagua, and no agent, representative, or employee had any knowledge Paniagua was acquiring the property as a straw purchaser for defendant prior to the transfer of the property and delivery of the policy to the person and entity conducting the transaction. (Compl. ¶ 14). Plaintiff did not know Paniagua would not reside at the property. *Id.*

**August 7, 2016 Incident and Subsequent Civil Action**

On August 7, 2016, defendant held an event at the property or at 10024 Quiet Meadow Lane that included the presentation of live musical groups, food and drink vendors, the sale of alcoholic beverages, and a rodeo with bull riding presented by an outside vendor. (Compl. ¶ 15). As many as 200 people attended the event, and defendant received monetary remuneration of approximately $11,000. *Id.* During the event, Fausto Ruiz Romero became engaged in riding a bull that resulted in fatal bodily injuries to Romero. (Compl. ¶ 16). Romero was pronounced dead on either August 7, 2016 or August 8, 2016. *Id.*

Defendant had actual knowledge of the incident resulting in the death of Romero on either August 7, 2016 or August 8, 2016. (Compl. ¶ 17). Plaintiff was first provided notice of the incident resulting in the death of Romero on September 6, 2018, over two years later. (Compl. ¶ 19).

4

On August 7, 2018, Sebastian Garcia, administrator of the estate of Romero, filed a civil action ("Garcia civil action") in the Circuit Court for Fauquier County, Virginia, against defendant and fifteen others in connection with the incident resulting in the death of Romero. (Compl. ¶ 20; Docket no. 1-2). Garcia seeks $5,000,000 in compensatory damages against all Garcia civil action defendants, jointly and severally. (Compl. ¶ 22; Docket no. 1-2 at 8). Plaintiff has been called upon to provide insurance benefits under the policy for defendant, including indemnification and a defense, for the claims and causes of action that are subject of the Garcia civil action. (Compl. ¶ 23).

### **Proposed Findings of Fact and Recommendations**

Federal Rule of Civil Procedure 55(a) authorizes the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on defendant's failure to file appropriate responsive pleadings within twenty-one (21) days of service, the Clerk of the Court entered default as to defendant. (Docket no. 14).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Federal Rule of Civil Procedure 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

5

## Jurisdiction and Venue

A court must have subject matter jurisdiction over a claim, personal jurisdiction over a defaulting party, and venue must be proper before it can render a default judgment. Diversity jurisdiction exists when the controversy is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Here, plaintiff is a citizen of Ohio, while defendant is a citizen of Virginia. (Compl. ¶¶ 4, 6). The amount in controversy exceeds $75,000, as the policy in question affords a liability coverage of $300,000. (Compl. ¶¶ 1, 7).

This court also has personal jurisdiction over defendant. As stated in the complaint, defendant is a resident of Virginia. (Compl. ¶ 6). As defendant is "at home" in the forum, there is general personal jurisdiction. *See Symbology Innovations, LLC v. Lego Systems, Inc.*, 282 F. Supp. 3d 916, 936 (E.D. Va. 2017) (noting that general personal jurisdiction exists where a defendant has affiliations with the state that are so "continuous and systematic" as to render defendant essentially at home in the state).

Venue is proper in this court pursuant to 28 U.S.C. § 1391. Defendant resides in this district. (Compl. ¶ 6). Additionally, a substantial part of the events or omissions giving rise to plaintiff's claim against defendant occurred in this district. Namely, the policy at issue was formed, made, and entered into in this district, the property covered by the policy is situated in this district, and the event that gave rise to the Garcia civil action occurred in this district. (Compl. ¶¶ 1, 10, 20).

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendant, and that venue is proper in this court.

## Service

Pursuant to Federal Rule of Civil Procedure 4(e)(1), service may be made in accordance with the laws of the state where the district court is located or where the service is made. Under VA. CODE ANN. § 8.01-296(2)(b) (2019), service of process may be effected by "posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode, provided that not less than 10 days before judgment by default may be entered, the party causing service or his attorney or agent mails to the party served a copy of such process and thereafter files in the office of the clerk of court a certificate of such mailing."

On January 6, 2023, Talley Rhodes, being unable to make personal service and not finding defendant or any member of his family aged sixteen (16) or older at his place of usual abode, posted a copy of the summons and complaint at defendant's front door or at such other door as appears to be the main entrance of such place of abode. (Docket no. 7). Plaintiff filed a notice that a copy of the summons and complaint were mailed to defendant on January 30, 2023. (Docket no. 12).

Based on the foregoing, the undersigned recommends a finding that defendant was properly served with the summons and complaint.

## Grounds for Entry of Default

On February 3, 2023, the Clerk entered default against defendant for failure to plead or otherwise defend. (Docket no. 14). On February 15, 2023, plaintiff filed a motion for default judgment, a memorandum in support, and a notice of hearing for Friday, March 24, 2023. (Docket nos. 15–17). Plaintiff also filed a certificate of mailing that copies of the motion for default judgment, memorandum in support, notice of hearing, and the certificate of mailing with

7

a *Roseboro* notice were sent to defendant. (Docket no. 18). At the hearing on March 24, 2023, counsel for plaintiff appeared, but no one appeared on behalf of defendant.

Accordingly, the undersigned recommends a finding that defendant was properly served, that he failed to file a responsive pleading in a timely manner, and that the Clerk properly entered a default as to defendant.

## Liability

According to Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because defendant failed to file an appropriate responsive pleading and is in default, defendant admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6). As set forth in the complaint, plaintiff seeks a judgment in plaintiff's favor and against defendant declaring plaintiff does not owe insurance coverage to, or for claims arising, either directly or indirectly, from the death of Romero and declaring plaintiff has no obligation to provide insurance coverage or benefits to, or for, defendant or to pay any judgments or claims arising, either directly or indirectly, out of the death of Romero. (Compl. Prayer for Relief ¶¶ J–K).

Under Virginia law, the validity and interpretation of a contract are governed by the law of state in which the contract was formed. *Johnson v. Brown*, 372 F. Supp. 2d 501, 508 (E.D. Va. 2005) (citing *Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 394 (1996)). Plaintiff alleges the policy was formed, made, and entered into in Fauquier County, Virginia. (Compl. ¶ 1). Furthermore, the insured location is in Catlett, Virginia; the policy was countersigned in Lynchburg, Virginia; and plaintiff's representative involved in issuing the policy was located in Vienna, Virginia. (Compl. ¶¶ 10; Docket no. 1-1 at 2, 4, 6). Accordingly, Virginia law shall apply when evaluating the validity and interpretation of the policy.

Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." An appropriate case for declaratory relief is "one where a plaintiff has an objective and reasonable apprehension of future litigation, which is of sufficient immediacy and reality, that a declaration of legal rights 'will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" *Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814, 817 (E.D. Va. 2000) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256–57 (4th Cir. 1996)). Here, due to plaintiff being presented with a demand to provide coverage for defendant for the claims and causes of action arising from the Garcia civil action (Compl. ¶¶ 23, 43–44), plaintiff has established this this case is appropriate for declaratory relief.

Plaintiff makes four arguments as to why defendant is not covered by the policy as it pertains to the Garcia civil action: (1) defendant is not "insured" under the policy; (2) defendant provided late notice to plaintiff; (3) material facts were misrepresented in the placement of the policy; and (4) defendant was engaged in business pursuits. (Compl. ¶¶ 29–42). If any one of these arguments is successful, defendant would not be entitled to the personal liability coverage under the policy.

**Not "Insured"**

Plaintiff contends that defendant does not fall within the meaning of "insured," and therefore he is not covered by the policy. (Compl. ¶¶ 29–32). Under the policy, an "insured" is defined as "you and the following if residents of your household at the residence premises: a) your relatives[;] b) any other person under age 21 and in the care of you or your relatives."

9

(Docket no. 1-1 at 9). In another part of the policy that applies directly to the personal liability coverage, "insured" is defined slightly differently:

> 5. "INSURED" means you and the following persons if residents of your household at the residence premises:
>    a) your relatives
>    b) any other person under age 21 and in the care of you or your relatives;
>    c) a person or entity legally responsible for animals or covered watercraft that are either owned by or in the custody of an insured. A person or entity using or having custody of these animals or watercraft in the course of business, or without permission of the owner, is not an insured[;]
>    d) any person operating, utilizing, or maintaining a covered vehicle while engaged in your employment or that of an insured.

*Id.* at 24. "You" refers to "the named insured shown in this policy who resides at the residence premises." *Id.* at 9. Under the personal liability provisions of the policy, plaintiff will pay damages an insured is legally obligated to pay due to an occurrence. *Id.* at 24. If an individual is not an insured, plaintiff has no responsibility to pay damages that individual is legally obligated to pay due to an occurrence.

Defendant, despite being the actual resident of the property, does not fall under the definition of "insured." He does not fit the "you" category, as he is not named as the policyholder/named insured of the policy. Assuming, *arguendo*, that Paniagua does meet the definition of "you" under the policy, defendant still would not be an "insured." Defendant is not a relative of Paniagua, is not under the age of twenty-one (21) years and in the care of Paniagua or a relative of Paniagua, and does not fit any other category for "insured." (Compl. ¶¶ 30, 32).

For these reasons, the undersigned recommends a finding that defendant is not entitled to personal liability coverage under the policy.

**Late Notice**

Plaintiff further contends that defendant and Paniagua materially breached the policy contract by providing notice of the incident that occurred on August 7, 2016 to plaintiff roughly

10

two years after defendant and Paniagua had actual knowledge of the incident. (Compl. ¶¶ 33–36). Under the policy, "you" must give plaintiff or plaintiff's agent notice "as soon as practicable." (Docket no. 1-1 at 29). In providing such notice, the policyholder must set forth the identity of the policy and insured; time, place, and facts of the accident or occurrence; and names and addresses of the claimants and witnesses. *Id.*

Courts have routinely held that an insurer is not obligated to fulfill its obligations under an insurance contract if there is an unreasonable delay in providing notice of an occurrence that might give rise to a claim. *See Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 454 n.9 (E.D. Va. 2006) (identifying cases from the Virginia Supreme Court, Fourth Circuit, and this district where courts have held that failure to give notice in a reasonable time constitutes a material breach). In *State Farm Fire & Cas. Co. v. Walton*, a group of teenagers, including Wade Walton, allegedly started a fire in a partially completed house in November 1985. 244 Va. 498, 500 (1992). In September 1986, counsel wrote a letter to Walton's stepfather that informed him of the negligent setting of a fire on the premises and suggested he immediately report the matter to his homeowners' insurance company. *Id.* In November 1987, over a year after the letter and roughly two years after the incident, plaintiffs filed suit against the teenagers to recover damages for their losses. *Id.* at 501. Walton was not served until November 1988. *Id.* Walton's family finally reported the claim to their insurer in December 1988. *Id.* Their policy included the duty to give notice to the insurer as soon as practicable after an occurrence. *Id.* at 503. In an action for declaratory judgment brought by the insurer, the Virginia Supreme Court held that "this duty to give notice 'as soon as practicable' after an 'occurrence' arose long before [Walton] was served with process in the [plaintiffs'] first action against him." *Id.* at 504. The Court found that because Walton and his family violated the notice requirement by waiting at least two years to

11

report the occurrence to their insurer, Walton was not entitled to coverage under the policy.[2] *Id.* at 505.

Plaintiff alleges that defendant had actual knowledge of the incident resulting in the death of Romero on either August 7, 2016 or August 8, 2016. (Compl. ¶ 17). Paniagua had actual knowledge of the incident by no later than September 30, 2016. (Compl. ¶ 18). Notice was first provided to plaintiff on September 6, 2018, roughly a month after the Garcia civil action was commenced. (Compl. ¶¶ 19–20, 35). Similar to *Walton*, defendant and Paniagua waited roughly two years from when they had actual knowledge of the incident to notify plaintiff about the claim, and they only notified plaintiff shortly after a lawsuit was brought against them. Such delay is a substantial and material violation of the notice requirement of the policy.

For these reasons, the undersigned recommends a finding that defendant is not entitled to personal liability coverage under the policy.

**Misrepresentation of Material Facts**

Plaintiff alleges that the policy should be void due to defendant's intentional misrepresentation of material facts. (Compl. ¶¶ 37–40). Plaintiff alleges that defendant misrepresented the fact that, while Paniagua took title of the property, defendant intended to be the owner and resident of the property. (Compl. ¶ 39). The policy is void for all insured "if you or any other insured has intentionally misrepresented any material fact or circumstance which would have caused us not to issue or renew this policy." (Docket no. 1-1 at 36).

Plaintiff stated in its complaint that plaintiff's agent issued the policy "based exclusively upon his communications with the person and entity conducting the transaction for the sale and

---

[2] The Court also noted that if a violation of the notice requirement is substantial and material, the insurer need not show that it was prejudiced by such violation. *Id.* at 504 (citing *State Farm Fire & Cas. Co. v. Scott*, 236 Va. 116, 120 (1988)).

transfer of the Property from The Gregory And Kathy Florence Living Trust to Ruddy Paniagua." (Compl. ¶ 14). Plaintiff admitted that, in issuing this policy, "[n]o agent, representative or employee of Nationwide had any communications with Mr. Paniagua or Mr. Martinez . . . prior to the transfer of the Property and the delivery of the Nationwide Policy to the person and entity conducting the said transaction." *Id.*

A misrepresentation is "[t]he act or an instance of making a false or misleading assertion about something . . . with the intent to deceive." Misrepresentation, BLACK'S LAW DICTIONARY (11th ed. 2019). Central to making a misrepresentation is making an assertion. It is unclear from the current record how defendant made an assertion to plaintiff, especially one that is considered an intentional misrepresentations of material facts, when defendant never communicated with one of plaintiff's agents or employees prior to the issuing of the policy. Furthermore, plaintiff does not contend that any misrepresentation was made following the issuing of the policy that would have caused the policy to be void.

Given the other recommendations in this report, the significance of this issue is not dispositive. However, the undersigned recommends that these reasons do not support a finding that defendant is not entitled to personal liability coverage under the policy.

**Business Pursuits**

Lastly, plaintiff contends that it is not required to provide personal liability coverage because the death of Romero occurred during, and as a part of, an event that was a business enterprise of defendant. (Compl. ¶¶ 41–42). Under the policy, personal liability coverage does not apply to bodily injuries arising out of business pursuits of an insured. (Docket no. 1-1 at 27). Exceptions to this exclusion are activities normally considered non-business and certain businesses on the residence premises if noted on the declarations. *Id.* The policy broadly defines

13

"business" to include "trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis. Business also includes any occasional business pursuits of an insured, including ownership of rental property." *Id.* at 9.

The Supreme Court of Virginia has pointed to two elements to define a business pursuit: continuity and profit motive. *See Virginia Mut. Ins. Co. v. Hagy*, 232 Va. 472, 475 (1987) (citing *Fadden v. Cambridge Mut. Fire Ins. Co.*, 274 N.Y.S.2d 235, 241 (N.Y. Sup. Ct. 1966), *aff'd*, 280 N.Y.S.2d 209 (N.Y. App. Div. 1967)). However, the language in the policy differs from "the more common business exclusion, which eliminates coverage for 'injury . . . arising out of business pursuits of any insured' without providing any definition of 'business.'" *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 246 n.6 (4th Cir. 1995) (citing *Hagy*, 232 Va. at 473). The definition of business under the policy does not alter the profit motive element, but it does supplant the continuity element. Instead of requiring continuity, defined as "a customary engagement or a stated occupation," *Hagy*, 232 Va. at 475, the exclusion necessitates only an occasional business pursuit. (Docket no. 1-1 at 9). Additionally, the Supreme Court of Virginia has held that for policy exclusions to be effective, the exclusionary language must clearly and unambiguously bring the act or omission within its scope. *Floyd v. N. Neck Ins. Co.*, 245 Va. 153, 158 (1993) (citing *State Farm Mut. Auto. Ins. Co. v. Gandy*, 238 Va. 257, 261 (1989); *Gulf Ins. Co. v. Tilley*, 280 F. Supp. 60, 64 (N.D. Ind. 1967)). "[T]he burden rests on the insurer to establish the clear applicability of a particular exclusion from coverage." *Fuisz*, 61 F.3d at 242 (citing *Johnson v. Ins. Co. of N. Am.*, 232 Va. 340, 350 (1986)). Therefore, plaintiff has the burden of demonstrating that the occurrence arose out of a business pursuit of an insured that was, at minimum, an occasional business pursuit of an insured and had a profit motive.

14

While not the most common business exclusion language, other courts have previously grappled with defining "occasional business pursuit." When evaluating circumstances where policies include "occasional business pursuit" language in the definition of "business," courts have typically found that one instance of an activity is not sufficient for the activity to fall under the business pursuit exception. *See Nationwide Mut. Ins. Co. v. Garman*, 2011 WL 484002, at *3 (M.D. Pa. Feb. 7, 2011) (finding that the requirements for the business pursuit exclusion were not met due, in part, to the lack of evidence demonstrating the insured had engaged in the activity at issue on previous occasions); *Nationwide Mut. Fire Ins. Co. v. Jones*, 695 F. Supp. 2d 978, 985–86 (D. Ariz. 2010) (holding that the elements for the business pursuit exclusion were not met, as the party hosted by defendant was an isolated occurrence and not a regular activity); *cf. Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 584–85 (6th Cir. 2001) (finding that building and selling a house is considered a business pursuit, but the house was the first of eight planned to be built and sold, plaintiff and her fiancé held themselves out as builders and were actively participating in the home-building plan, and plaintiff obtained financing for the construction of the house through her job as a lender for a bank).

Plaintiff has not made any allegations or provided any information in the record to demonstrate that the event held at the property on August 7, 2016 was anything more than a one-time event. Plaintiff has not alleged that defendant has held a similar event on the property other than on August 7, 2016, much less happening at a frequency that could be considered an occasional business pursuit. Without more, the undersigned cannot recommend a finding that the occasional business pursuit prong of the analysis is met. Therefore, plaintiff has not met its burden of establishing the clear applicability of the business pursuit exception.[3]

---

[3] The undersigned need not address the profit motive element for the exclusion.

15

Given the other recommendations in this report, the significance of this issue is not dispositive. However, the undersigned recommends a finding that, based on the current record, the business exclusion would not support a determination that defendant would not be entitled to personal liability coverage under the policy if defendant was an insured and gave timely notice of the claim.

## Conclusion

For the reasons stated above, the undersigned recommends that a default judgment be entered in favor of plaintiff, Nationwide General Insurance Company, and against defendant, Hector Montalvo Martinez, and that an order be issued declaring plaintiff does not owe insurance coverage to, or for claims arising, either directly or indirectly, from the death of Romero and declaring plaintiff has no obligation to provide insurance coverage or benefits to, or for, defendant or to pay any judgments or claims arising, either directly or indirectly, out of the death of Romero.

## Notice

By means of the court's electronic filing system, by mailing a copy of these proposed findings of fact and recommendations to Hector Montalvo Martinez, 10026 Quiet Meadow Lane, Catlett, Virginia 20119, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of these proposed findings of fact and recommendations. A failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 24th day of March, 2023.

                                                             /s/
                                                     John F. Anderson
                                                     United States Magistrate Judge

Alexandria, Virginia